## PATON ET AL. V. BAKER.

1. **Partnership**: CONVEYANCE OF LAND TO PARTNER FOR FIRM DEBT:
POWER OF PARTNER TO DISPOSE OF SAME.   Where land was conveyed
to a partner in payment of a debt due the firm, and the word "trustee"
was written in the deed after the partner's name, the object and under-
standing being that the deed should be so made, instead of to the firm, for
greater convenience in again conveying the land when it should be sold,
*held* that the partner had the right and power to bind his fellow partners
by the sale of the land, through an attorney in fact appointed by him for
that purpose, and that the word "trustee" in the deed neither enlarged
nor restricted his power—the property being regarded as personal assets
of the firm, as to which one partner may bind all the others by any con-
tract made within the scope of the partnership.

*Appeal from Appanoose Circuit Court.*

THURSDAY, APRIL 19, 1883.

THE plaintiffs claim to be the equitable owners of certain
real estate, and by their petition they seek to set aside and
cancel certain conveyances thereof to the defendant.   The
defendant claims to be the legal and equitable owner of the
land.   There was a decree for the defendant, and plaintiffs
appeal.

*Stiles & Beaman*, for appellants.

*Tannehill & Fee* and *Vermillion, Haynes & Vermillion*,
for appellee.

ROTHROCK, J.—In the year 1871, Thomas C. Paton, William Paton, J. Langmire, A. G. Agnew and W. A. Paton, the plaintiffs herein, were engaged in the dry goods business in the city of New York, in the partnership name of Paton & Co. Walter J. Crook, of Baltimore, was indebted to said parternership in the sum of about $12,000. Crook failed in business and became insolvent, and, to pay the debt he owed said partnership, he conveyed the land in controversy, and other lands, to A. G. Agnew, one of said partnership firm. So far as the record before us shows, the deed was an ordinary conveyance, excepting that the word trustee was inserted therein immediately after the name of the grantee. There was no reservation of any right in the land by Crook, and the deed conveyed to Agnew the full title of the property. The conveyance was taken to Agnew, instead of to all the members of the firm, for convenience in conveying and selling the land, and it was understood that the lands were to be put in the market for sale. In 1874, the land being still unsold, Agnew executed to one LaForce, of Ottumwa, Iowa, a power of attorney, authorizing him to sell and convey the same. In the same year LaForce sold and conveyed the land in controversy to the defendant. The sale was consummated by the making of two deeds—one for thirty acres, in which the consideration expressed was $450. This was a deed containing covenants of general warranty. The other was a quit-claim deed to eighty acres, which included the thirty acres, for an expressed consideration of $100. The defendant paid the purchase-money in full, and part of it was remitted by LaForce to the plaintiffs' agent in Philadelphia, and was afterwards paid by him to the plaintiffs. LaForce sold the other land, and made default in payment to the plaintiffs, and absconded.

The plaintiffs insist that the conveyances to the defendant should be canceled, because Agnew held the land in trust for the other plaintiffs, and had no power to sell the same without their consent, and had no power to authorize LaForce to

sell and convey, and that the defendant was charged by the record of the trust deed with notice of the rights of the plaintiffs other than Agnew, and is not an innocent purchaser. It is further claimed that the land was worth 1,200, and that the consideration paid therefor was grossly inadequate. Evidence was taken upon the question as to whether the individual members of Paton & Co. had notice of or consented to the sale of the lands in the manner in which they were sold, and the court by its decree required the defendant to pay to one of the plaintiffs the sum of $74, and to another $57, and made these amounts liens upon the land. This must have been on the theory that Agnew had no power to sell and convey without the knowledge and consent of his co-partners, and that the two to whom the allowance was made had no knowledge of and did not consent to the sales. The defendant does not appeal, and is content with the decree as it is.

In the view we take of the case, we do not deem it material to determine whether the plaintiffs consented to the sale or had knowledge thereof. Indeed, we think the decree of the court confirming the defendant's title may be sustained by conceding all of the facts claimed by the plaintiffs.

As we have seen, the partnership of Paton & Co. took the title of this land in payment of a debt due to the firm, and with the purpose of disposing of it as soon as a purchaser could be found. The firm continued in active business until after the land was purchased by the defendant. The partnership received part of the consideration for the land. We do not regard it as material whether or not they knew that the money received was part of the purchase-money.

It is well settled that, when land is purchased with partnership funds, and intended to be used for partnership purposes, it is to be treated as personal assets of the partnership. "Real property held by a partnership is to be regarded as the property of the firm as to the creditors and all persons dealing with it." *Hewitt v. Rankin*, 41 Iowa, 35, and authorities cited. Another rule equally well settled is, that one partner

may bind his co-partners by any contract made within the scope of the partnership business. Story on Partnership, § 322. And one partner is presumed to consent to all the acts of his co-partners within the scope of the business of the firm. *Boardman & Gray v. Adams & Hackley*, 5 Iowa, 224.

Now, if the word "trustee" had not been used in the deed to Agnew, of course the conveyance to the defendant would have been valid, because there is nothing in the record to show that the defendant had actual notice that the plaintiffs other than Agnew had any equity in the land. But appellants contend that defendant was charged by the record of the deed and power of attorney with notice that Agnew was a mere trustee, and without any power to sell. But we have seen that the land was held for sale, and, if the defendant had made inquiry as to the nature of the trust, it is to be presumed that he would have learned the truth, which was that the land was partnership assets, and, as to creditors and others dealing with the firm, it was the same as personal property of the firm. Every partner who holds the legal title of partnership real estate holds the same in trust for the benefit of the firm, and the trust created by this deed is not enlarged or limited by the use of the word trustee in the deed. If, then, the land is to be treated as personal property held by the firm for sale, any member of the firm could have made a contract of sale for the benefit of the firm, which would have been binding upon all the other members, and upon which a specific performance could have been enforced, because it would have been a contract within the scope of the partnership business. Suppose a partnership should take a horse, or any other personal chattel, in payment of a partnership debt, with the purpose of selling the property as soon as a purchaser could be found. No one would claim that a purchaser of such property, having notice that it belonged to the partnership, would be required to make his contract of purchase personally with all the members of the firm. The control and disposition of partnership real estate is not different, only that the partner

in whom the legal title is vested must convey to a purchaser to make his title complete. And, if one member can make a valid sale, surely the one who holds the legal title may authorize another to make the sale and conveyance. It will be remembered that Agnew did not make the power of attorney and did not effectuate the conveyance for any purpose outside the scope of the partnership, as for the purpose of paying his individual debt, or the like. We think these views are based upon principles which cannot be successfully assailed. The commercial and financial business of this country is largely transacted by partnerships, and their business requires that it should be transacted with as little circumlocution as is consistent with the rights of the individual partners and with the public. They ought not to be allowed to take advantage of an improvident contract made by one of their members, when the contract is within the scope of the partnership business. It is claimed that the purchase-price of the land was grossly inadequate. It is sufficient to say that it is not shown that the defendant practiced any fraud in making his purchase. It seems that he acted in entire good faith, and it does not appear that Agnew or his attorney was mentally incompetent to contract. We think the decree of the circuit court must be

AFFIRMED.